IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SELECT SPECIALTY HOSPITAL –    *
QUAD CITIES, INC.
                               *
Plaintiffs,
                               *

v.                             *        Civil Action No. PX-18-03586

WH ADMINISTRATORS, INC.        *

Defendant.                     *
                            *****

## MEMORANDUM OPINION

Pending before the Court is Plaintiff Select Specialty Hospital – Quad Cities, Inc.'s ("SSH") motion for default judgment.  ECF No. 10.  Defendant WH Administrator's Inc. ("WH") has not responded, and the time for doing so has passed.  *See* Loc. R. 105.2.  Pursuant to Local Rule 105.6, a hearing is not necessary.  For the following reasons, request for this Court to enter default judgment in the amount of $200,214.98 in damages; $5,610.78 in prejudgment interest; $8,502.50 in costs and reasonable attorney's fees is GRANTED.

### I.    Background

Plaintiff SSH is incorporated in Delaware with its principal place of business in Iowa.  ECF No. 1 ¶ 1.  Defendant WH is incorporated in Texas with its principal place of business in Maryland.  *Id.* ¶ 2.

On October 19, 2016 J.K. ("the Patient") was admitted to SSH, a long-term acute care hospital specializing in critical care recovery.  *Id.* ¶¶ 6–7.  The Patient was covered under an employer-sponsored preferred provider organization health care plan.  *Id.* ¶ 8.  On the day of her admission, the Patient assigned her rights to benefits under the plan to SSH and authorized SSH

to file claims necessary for the collection of those benefits.  *Id.* ¶ 10.  Before providing treatment, SSH contacted the plan administrator, Benefit Administrative Systems ("BAS").  BAS confirmed the Patient's coverage and authorized admission at SSH.  *Id.* ¶¶ 9, 25–26.  BAS issued an extended certification for the Patient's ongoing care on October 28, 2016.  ECF No. 14 ¶ 10.

The Patient remained under SSH's care until her death on November 16, 2016, during which time SSH provided services valued at $200,214.98.  ECF No. 1 ¶¶ 11–12.  SSH submitted a claim to BAS for $200,214.98 on November 28, 2016.  *Id.* ¶ 13.  On January 3, 2017, BAS informed SSH that the plan had been transferred to Defendant WH.  *Id.* ¶ 14.  SSH resubmitted its claim to WH that same day.  *Id.* ¶ 16.  WH has refused to pay for the claims despite SSH's ongoing efforts to obtain payment.  *Id.* ¶ 17.

Arising from WH's nonpayment, SSH filed suit in this Court on November 21, 2018, for breach of contract (Count 1), promissory estoppel (Count 2), and bad faith denial of an insurance claim (Count 3).  *Id.* ¶¶ 18–34.  WH was served the Complaint and summons by certified mail on January 22, 2019 in accordance with Federal Rule of Civil Procedure 4(h) and 4(e)(1).  ECF No. 9.  WH failed to enter an appearance or otherwise respond, and SSH moved for default judgment on January 7, 2020.  ECF No. 10.  A Clerk's Order of Default was entered on March 27, 2020. ECF No. 11.

On June 5, 2020 this Court ordered SSH to supplement its motion for default judgment with a copy of the coverage plan and evidence supporting the claimed damages.  ECF No. 13. While SSH submitted invoices supporting the claimed damages, it did not have in its possession the precise coverage plan governing WH's payment for services rendered to the Patient.[1]  ECF

---

[1] SSH moves to seal exhibits "E", "F", and "I" from ECF No. 14 because the exhibits include personal and health information.  ECF No. 16.  As a general matter, "[s]ensitive medical or personal identification information may be sealed," so long as the request is not overbroad.  *Rock v. McHugh*, 819 F. Supp. 2d 456, 475 (D. Md. 2011)

No. 15 at 12; ECF No. 14 ¶ 5.  SSH averred that because the coverage plan was stored exclusively on WH's website, and the website is no longer functional, SSH cannot access the coverage plan.  *Id.*

Instead, SSH submits a coverage plan that SSH represents is the same in all material respects.  ECF No. 14-2.  The submitted coverage plan was also part of the record evidence in a similar action before the Honorable Richard D. Bennett in this court.  *Acosta v. WH Administrators, Inc.*, No. RDB-18-1290, 2020 WL 1479580 (D. Md. Mar. 26, 2020).[2]  In *Acosta*, WH, as the party defendant, had represented that the coverage plan is "substantially similar to the contents of all other compliance service agreements that WH Administrators entered into with its other employer clients."  *Acosta*, No. RDB-18-1290, Sec. of Labor's Memo. In Support of His Motion for Summary Judgment at 16, n. 9 (ECF. No. 38-1).  Accordingly, SSH correctly urges the Court to construe the rights and obligations as laid out in the *Acosta* coverage plan as the same governing this matter.  The Court will do so for purposes of resolving this motion.

Pertinent here, the coverage plan clearly states that participants enjoy protection of the Employee Retirement Income Security Act of 1974 (ERISA).  ECF No. 14-2 at 113.  Participants are owed the right to request and receive copies of plan documents, the right to file suit in state or federal court for enforcement of claims for benefits, and the right to seek redress in the event that the plan fiduciaries misuse the plan's funds.  *Id.*

---

(citing *Pittston Co. v. United States*, 368 F.3d 385, 406 (4th Cir. 2004) and *Briggs v. Marriott Int'l, Inc.*, 368 F. Supp. 2d 461, 463 n. 1 (D. Md. 2005), *aff'd*, 205 Fed. Appx. 183 (2006)).  Plaintiff's motion to seal is therefore granted.

[2] WH's behavior in the present case fits the pattern of systemic misconduct, and lack of responsiveness, demonstrated in *Acosta*.  *Acosta v. WH Administrators, Inc.*, 2020 WL 1479580, at *9 (D. Md. Mar. 26, 2020).  There, Judge Bennett found that WH violated a wide range of fiduciary obligations under ERISA and permanently enjoined WH from acting as a fiduciary or service provider for any ERISA-covered employee benefit plan.  *Id.* at *10.

As for the terms governing WH's obligations to reimburse for services, the coverage plan requires that WH issue a decision on post-service claims for payment "not later than 30 days after receipt of the claim[.]" *Id.* at 56. If payment is not received, a claimant such as SSH may take legal action 90 days after a claim has been properly submitted. *Id.* at 65. Where the Patient-participant assigned her right to benefits to SSH as the provider, the plan authorizes a provider like SSH to submit claims and receive payment of benefits as the participant's assignee. *Id.* at 64. Under the coverage plan, the court retains discretion to award the provider's costs and legal fees. *Id.* at 113.

## II.    Standard of Review

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." The Court may conduct hearings or make referrals when necessary to determine the damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2). Thereafter, the court may enter default judgment at the plaintiff's request and with notice to the defaulting party. *Id.*

Plaintiff, however, is not automatically entitled to default judgment simply because the defendant has not responded. Rather, entry of default judgment is left to the sound discretion of the court. *See, e.g.*, *Choice Hotels International, Inc. v. Jai Shree Navdurga, LLC*, DKC 11-2893, 2012 WL 5995248, at *1 (D. Md. Nov. 29, 2012); *see also Choice Hotels International, Inc. v. Austin Area Hospitality, Inc.*, TDC 15-0516, 2015 WL 6123523, at *1 (D. Md. Oct. 14, 2015).

4

Although the United States Court of Appeals for the Fourth Circuit has announced a "strong policy" in favor of deciding cases on their merits, *United States v. Schaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment may be appropriate when a party is unresponsive. *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)); *see Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir. 1987) (upholding a default judgment award where the defendant lost its summons and did not respond within the proper period); *Disney Enterprises, Inc. v. Delane*, 446 F. Supp. 2d 402, 405-06 (D. Md. 2006) (finding appropriate the entry of default judgment where the defendant had been properly served with the complaint and did not respond, despite repeated attempts to contact him).

With respect to liability, the court takes as true all well-pleaded facts in the complaint. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").  The court applies the pleading standards announced in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), in the context of default judgments.  *See, e.g., Balt. Line Handling Co. v. Brophy,* 771 F. Supp. 2d 531, 544 (D. Md. 2011); *Russell v. Railey*, No. DKC-08-2468, 2012 WL 1190972 at *2–3 (D. Md. Apr. 9, 2012); *U.S. v. Nazarian*, No. DKC-10-2962, 2011 WL 5149832 at *2–3 (D. Md. Oct. 27, 2011); *Bogopa Serv. Corp. v. Shulga,* No. 3:08cv365, 2009 WL 1628881, at *1–2 (W.D.N.C. June 10, 2009).  A complaint that avers bare legal conclusions or "naked assertion[s] devoid of further factual enhancement," is insufficient to award default judgment.  *See, e.g., Balt. Line Handling Co.,* 771 F. Supp. 2d at 544 ("The record

lacks any specific allegations of fact that 'show' why those conclusions are warranted.") (internal quotation marks omitted).

If the complaint avers sufficient facts from which the court may find liability, the court next turns to damages. *See Ryan,* 253 F.3d at 780-81. Damages are circumscribed by that which is requested in the complaint. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). The damages request must be supported by evidence introduced either at a hearing or by affidavit or other records. *See* Fed. R. Civ. P. 54(c); *Lawbaugh,* 359 F. Supp. 2d at 422. *See, e.g., Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794–95 (D. Md. 2010).

### III.    Discussion

#### A.    ERISA Preemption

SSH raises state common law causes of action for which this Court properly exercises diversity jurisdiction pursuant to 28 U.S.C. § 1332. A court sitting in diversity must apply the conflict of law rules of the forum state— here, Maryland. *See Sokolowski v. Flanzer*, 769 F.2d 975, 977 (4th Cir. 1985). In Maryland, it is "generally accepted that the parties to a contract may agree as to the law which will govern their transaction." *Kronovet v. Lipchin*, 288 Md. 30, 43 (1994). But absent a choice-of-law provision in a contract, Maryland applies the law of the jurisdiction where the contract was formed, *see American Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 570 (1995), and that is where the last act necessary to make the contract binding occurs, *see Commercial Union Ins. Co. v. Porter Hayden Co.*, 116 Md. App. 605, 672 (1997).

Under the coverage plan, participants are "entitled to … rights and protections under ERISA." ECF No. 14-2 at 113. Although SSH brings common law claims, it too acknowledges

that the coverage plan is governed by ERISA.  ECF No. 14 ¶ 14.  ERISA preempts all state common law claims that "relate to" any employee benefit plan."  29 U.S.C. § 1144(a).  ERISA's expansive preemptive provisions "are intended to ensure that employee benefit plan regulation would be exclusively a federal concern."  *Aetna Health, Inc., v. Davila*, 542 U.S. 200, 208 (2004) (internal quotation marks omitted); *see also Shaw v. Delta Air Lines*, 463 U.S. 85, 96–97 (1983).

ERISA's civil enforcement provision, § 502(a), grants plan participants and beneficiaries the right to sue to enforce disclosure of certain information, to obtain benefits under the plan, or to enforce rights or fiduciary requirements under ERISA or the plan.  29 U.S.C. §§ 1132(a)(1)-(4).  Under § 502(a), a state claim is completely preempted and converted into a federal claim if: (1) the plaintiff has standing under § 502(a); (2) the claim is within the scope of § 502(a); and (3) the claim is not capable of resolution without interpretation of the ERISA plan.  *See Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 372 (4th Cir. 2003).

The United States Supreme Court has held this provision retains "extraordinary pre-emptive power."  *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65–66 (1987).  State law claims that provide an alternative enforcement mechanism to ERISA § 502 are completely preempted and converted into federal claims for the purposes of the well-pleaded complaint rule.  *Id.*; *see also Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 187 (4th Cir. 2002).  Notably, however, an ERISA plan administrator is not insulated from state law liability.  Rather, where claims are not covered by an alternative enforcement mechanism for ERISA, the claim is not preempted and may proceed.  *Id.* at 192, 194.

With this statutory backdrop in mind, the Court turns to SSH's individual claims.

### A.  Liability

#### 1.  Breach of Contract (Count I)

SSH's breach of contract claim is completely preempted by ERISA.  *Id.*  SSH has derivative standing as a third-party provider assigned the Patient's rights under an ERISA plan. ECF No. 1 ¶ 10; *see e.g.*, *Nat'l Ctrs. for Facial Paralysis, Inc. v. Wal–Mart Claims Admin. Group Health Plan*, 247 F.Supp.2d 755 (D. Md. 2003); *Drs. Reichmister, Becker, Smulyan and Keehn, P.A., v. United Healthcare of the Mid-Atl., Inc.*, 93 F.Supp.2d. 618 (D. Md. 2000).  The claim for reimbursement is within the scope of ERISA because SSH is suing for benefits under an ERISA plan.  ECF No. 14-2 at 113.  *See Feldman's Med, Ctr. Pharmacy, Inc. v. CareFirst, Inc.*, 723 F.Supp.2d 814, 819 (D. Md. 2010).  Lastly, the claim is based on the Patient's assignment of benefits and therefore requires interpretation of the Patient's ERISA plan.  ECF No. 1 ¶¶ 21-22; *Carefirst, Inc.*, 723 F.Supp.2d at 821.  Accordingly, the Court treats this claim as one brought by a claims administrator to recover benefits due under the coverage plan.  *See* 29 U.S.C. § 1132(a)(1)(B).[3]

As to the merits, the averred facts taken as true demonstrate that the Patient assigned to SSH the right to obtain payment under the coverage plan, and SSH submitted a claim for reimbursement to WH in accordance with the coverage plan.  ECF No. 1 ¶¶ 10, 13–14, 16, 19; ECF No. 14-2 at 56.  Indeed, the plan administrator certified that the services SSH provided were covered by the plan.  *Id.* ¶¶ 25–26.  Thus, SSH is owed payment under the coverage plan.  The motion for default judgment as to Count I is granted.

---

[3] While exhaustion of administrative remedies is generally prerequisite for a claim under § 502(a)(1)(B), exhaustion may be excused where "clear and positive" evidence demonstrates that the remedies are futile or useless. *See Makar v. Health Care Corp. of the Mid–Atl.*, 872 F.2d 80, 82–83 (4th Cir. 1989).  WH not only ignored SSH's initial claim but also failed to participate in any stage of this lawsuit.  ECF No. 1 ¶ 17; ECF No. 14 ¶ 13.  WH comported itself similarly in *Acosta*.  *Acosta*, 2020 WL 1479580, at *9.  On this basis, it is plainly evident that exhaustion would be futile.

## 2.  Promissory Estoppel (Count II)

ERISA does not preempt a promissory estoppel claim against a plan administrator when the plaintiff does not bring the claim in its capacity as an assignee of an ERISA plan.  This is so because the claim is not "related to" the right to recover under the plan.  29 U.S.C. § 1144(a); *Nat'l Ctrs. for Facial Paralysis, Inc.*, 247 F.Supp.2d at 760; *Conn. General Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC.*, No. DKC 14–2376, 2015 WL 4394408, at *35 (D. Md. July 15, 2015).  Put differently, where the cause of action is independent of whether it relates to "an ERISA plan or to a promise to whitewash a fence[,]" the only relevant question is whether the defendant made a promise the law will enforce.  *Suburban Hosp., Inc. v. Sampson*, 807 F. Supp. 31, 34 (1992).  Here, SSH's promissory estoppel claim is not based on its rights as the Patient's assignee under an ERISA plan, but rather, on WH's certification of coverage for the Patient's treatment at SSH.  ECF No. 1 ¶¶ 24–29.  The promissory estoppel claim is thus not preempted and can proceed.

A question remains, however, as to which state's law applies.  "[I]n Maryland, promissory estoppel is an alternative means of obtaining contractual relief."  *Md. Transp. Auth. Police Lodge #34 of the Fraternal Order of Police, Inc. v. Md. Transp. Auth.*, 195 Md. App. 124, 215 (2010), *rev'd on other grounds*, 420 Md. 141 (2011).  The final act necessary to make WH's promise to cover the cost of the Patient's treatment contractually binding, SSH's reliance, seems to have taken place in Iowa.  ECF No. 1 ¶¶ 1, 25–28; *see Sampson*, 807 F. Supp. at 33 (noting that the final act needed to make a one-sided promise into an enforceable contract is the necessary reliance of the promise).  Consequently, under Maryland's choice-of-law rules governing contracts, Iowa law applies.  *See ARTRA Group, Inc.*, 338 Md. 570 (1995)*; see also Commercial Union Insurance Co.*, 116 Md. App. 672 (1997).

Under Iowa law, the elements necessary to establish promissory estoppel are:
(1) a clear and definite promise; (2) made with the promisor's clear understanding that the promisee was seeking an assurance upon which the promisee could rely and without which he would not act; (3) the promisee acted to his substantial detriment in reasonable reliance on the promise; and (4) injustice can be avoided only by enforcement of the promise. *Kunde v. Estate of Bowman*, 920 N.W.2d 801, 810 (Iowa 2018) (quoting *Schoff v. Combined Ins. Co. of Am.*, 604 N.W.2d 43, 49 (Iowa 1999)).

The averred facts are sufficient to find in favor of SSH. WH, as plan administrator, clearly and definitely certified the Patient's coverage under the plan and explicitly authorized admission and treatment at SSH; this certification of coverage was subsequently extended and reaffirmed. ECF No. 1 ¶¶ 25–26; ECF No. 14 ¶ 10. Because SSH sought this assurance before allowing the patient's admission, the plan administrator knew that SSH sought a promise upon which it could rely. ECF No. 1 ¶ 9. SSH acted to its substantial detriment and in reasonable reliance on this promise, provided coverage for services and treatment valued at $200,214.98. *Id.* ¶¶ 11–12. Injustice can only be avoided by enforcement because WH has refused to pay for these services as promised. *Id.* ¶ 29. Thus, SSH's motion for default judgment as to liability on this count is granted.

### 3.  Bad Faith Denial of an Insurance Claim (Count III)

SSH's final cause of action compels a different result. State insurance bad-faith claims are preempted by ERISA § 502(a). *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987). ERISA "says nothing about the recovery of extracontractual damages," and any state law claim for punitive damages arising from the improper processing or denial of a claim is barred. *See*

*Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144-48 (1985).  Accordingly,

Plaintiff's motion for default judgment on this count is denied.

### B.  Damages

#### 1.  Compensatory Damages and Interest

SSH has fashioned Counts I and II as alternative theories of liability under which WH

owes it reimbursement for the cost of services provided to the Patient. [4]  ECF No. 1 ¶¶ 18–29.

SSH seeks the same relief under either count—damages equaling $200,214.98, prejudgment

interest, and attorney's fees and costs.  *Id.* ¶¶ 23, 29.

Because Count I is governed by ERISA, the statute also circumscribes allowable

damages.  Section 502(a)(1)(B) permits participants and beneficiaries to recover the benefits

owed under the terms of the plan but disallows consequential or punitive damages.  29 U.S.C. §

1132(a)(1)(B); *Russell*, 473 U.S. at 144–48.  A plaintiff may also seek attorneys' fees and other

forms of equitable relief under ERISA. 29 U.S.C. §§ 1132(a)(3), 1132(g)(1).

Based on the evidence submitted, SSH is entitled to $200,214.98 under the terms of the

coverage plan.  ECF No. 1 ¶¶ 11–12, 23.   In support of this award, SSH submitted an invoice

dated January 3, 2017 detailing the services and care provided to the Patient.  ECF No. 15 at 12.

This evidence adequately supports the amount sought in the complaint as to Counts I and II.

SSH also seeks pre- and post-judgment interest on this amount.  As to pre-judgment

interest, although ERISA does not expressly address this relief, courts retain discretion to impose

it.  *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1030 (4th Cir. 1993).  This court has

recognized a presumption in favor of pre-judgment interest in ERISA cases.  *See Feldman's*

---

[4] Although SSH may plead both contract and promissory estoppel theories, it is entitled to one recovery for the amount owed arising from the breach of WH's obligations.  *See Swedish Civil Aviation Admin. v. Project Mgmt. Enter., Inc.*, 190 F.Supp.2d 785, 792 (D. Md. 2002).

*Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc.*, 823 F. Supp. 2d 307, 324 (D. Md. 2011).  In determining whether to award pre-judgment interest, the Court considers "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Id.* (quoting *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir. 2000)).

Application of pre-judgment interest is warranted.  WH was clearly obligated to cover SSH's claim and it left SSH high and dry without any attempts at resolution.  SSH, therefore, not only lost the reimbursement itself, but the opportunity to use otherwise timely-paid funds for other needs.  It should be compensated for such lost opportunity, and most equitably, by way of interest on the funds effectively "loaned" to WH by virtue of the breach.

The pre-judgment interest rate is likewise left to the discretion of the district court. *United States v. Dollar Rent A Car Sys., Inc.*, 712 F.2d 938, 940 (4th Cir. 1983) (citing *E.E.O.C. v. Liggett & Myers, Inc.*, 690 F.2d 1072, 1074 (4th Cir.1982)).  This court has previously held that the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is generally appropriate for fixing the rate of pre-judgment interest unless substantial evidence shows that the equities require a different rate.  *See CareFirst, Inc.*, 823 F. Supp. 2d at 326 (relying on *Blankenship v. Liberty Life Assurance Co. of Boston*, 486 F.3d 620, 628 (9th Cir. 2007)).  SSH has not presented any evidence justifying a higher interest rate to compensate the company for the loss of the use of monies during the relevant time period.  Without such evidence, the Court applies the interest rate prescribed under § 1961.

As to the date at which pre-judgment interest begins to accrue, the Court finds that it should run from the date that WH was obligated to respond to SSH's claim or 30 days after

receipt of the claim.  ECF No. 14-2 at 56.  WH's wrongful deprivation of benefits owed under

the plan occurred on the 31st day after SSH submitted its claim to WH.  *CareFirst, Inc.*, 823 F.

Supp. 2d at 329.  Pre-judgment interest will be applied beginning February 3, 2017 through the

date of judgment for a total of $5,610.78.[5]  ECF No. 1 ¶ 16.

As to post-judgment interest, any award is governed by 28 U.S.C. § 1961.  Because

ERISA makes clear that it does not "alter, amend, modify, invalidate, impair, or supersede any

law of the United States," § 1961 governs.  29 U.S.C. § 1144(d); *Quesinberry*, 987 F.2d at 1031.

28 U.S.C. § 1961 mandates the award of post-judgment interest on the entire amount of the

judgment, including any pre-judgment interest.  *Id.* at 1031–32.  Post-judgment interest will run

until the outstanding amount is satisfied.

### 2.        Attorney's Fees and Costs

SSH avers entitlement to attorney fees and costs.  ECF No. 10 at ¶¶ 10–11.  For claims

covered under ERISA, the Court considers the following factors when determining whether to

award attorneys' fees: (1) the degree of opposing parties' culpability or bad faith; (2) ability of

opposing parties to satisfy award; (3) whether award against opposing parties would deter other

persons acting under similar circumstances; (4) whether parties requesting fees sought to benefit

all participants and beneficiaries of ERISA plan or to resolve significant legal question

regarding ERISA itself; and (5) the relative merits of parties' positions.  29 U.S.C. § 1132(g)(1);

*Metropolitan Life Ins. Co. v. Pettit*, 164 F.3d 857, 865–66 (4th Cir. 1998).  This is not a rigid

---

[5] Pre-judgment interest is computed daily at a "rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System" for the calendar week preceding the wrongful deprivation of benefits.  28 U.S.C. § 1961(a)-(b).  Accordingly, interest accrues at a rate of .798 percent ($4.38 per day) through the date of judgment for a total of $5,610.78 (1281 days passed between 2/3/17 and 8/7/20).  U.S. Department of the Treasury, *Resource Center: Daily Treasury Yield Curve Rates*, https://www.treasury.gov/resource-center/data-chart-center/interest-rates/pages/TextView.aspx?data=yieldYear&year=2017 (last visited August 4, 2020).

test, but rather a general guideline in determining whether to grant a request for attorneys' fees. *Quesinberry*, 987 F.2d at 1029.

Three of the five factors weigh heavily in favor of awarding SSH attorney's fees and costs. WH appears to have improperly ignored SSH's claim for benefits, conduct consistent with its broad pattern of fiduciary malfeasance while administering ERISA plans. *See Acosta*, 2020 WL 1479580, at *9. SSH has also clearly presented the relatively stronger position; WH has not participated in any stage of this suit and now faces default judgment. ECF No. 10. The two remaining factors lean in WH's favor. SSH sought neither to benefit all ERISA participants nor resolve significant legal questions regarding ERISA itself. Additionally, WH is likely unable to satisfy the reward; during the litigation of *Acosta*, WH corporate and trust bank accounts contained zero dollars. *Acosta*, 2020 WL 1479580, at *3. Because the balance of factors favors SSH, the Court awards attorneys' fees and costs.

SSH has requested a total of $9,505.50 for attorneys' fees and $400 for costs and expenses for a total sum of $9,900.50. ECF No. 10 at ¶¶ 10–11. The Court assesses the reasonableness of such requests by considering Appendix B to this Court's Local Rules and the following factors: the professional time and labor invested, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; the likelihood, if apparent to the client, that the lawyer's acceptance of the particular engagement will preclude other employment; the fee customarily charged in the locality for similar legal services; the amount in controversy and the results obtained; the time limitations imposed by the client or by the circumstances; the nature and length of the professional relationship with the client; the experience, reputation, and ability of the lawyer or lawyers performing the services; and whether

the fee is fixed or contingent.  *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009); Loc. R. 1(c), Appendix B.

SSH is represented by Zachary E. Nahass (ZEN), of CGA Law Firm.  *See* ECF No. 10 at 7.  Counsel has submitted a "matter ledger report" reflecting work performed also by attorneys Devon Meyers (DMM) and Jack M. Hartman (JMH), and paralegal Judith M. Becker (JMB).  *Id.* at 11.  The report reflect that (1) ZEN submitted 8.1 billable hours at the rate of $250 per hour; (2) DMM submitted 9.3 billable hours at the rate of $200 per hour and 1.7 billable hours at the rate of $225 per hour; (3) JMH submitted 6.4 billable hours at the rate of $345 per hour; and (4) JMB submitted 20.2 billable hours at the rate of $150 per hour.  *See* ECF No. 10 at 9–12.

"The fee applicant bears the burden of establishing the reasonableness of a requested hourly rate."  *Astornet Techs., Inc. v. BAE Sys.*, Inc., 201 F. Supp. 3d 721, 730 (D. Md. 2016) (citing *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)).  In the District of Maryland, evidence of the prevailing market rate is "embedded" in the Guidelines set out in this Court's Local Rules. *Manning v. Mercatanti*, No. ELH-11-2964, 2014 WL 1418322, at *5 (D. Md. Apr. 10, 2014) (citation omitted); *see also* Loc. R., App'x B.  For lawyers admitted to the bar for fewer than 5 years, an hourly rate that falls between $150-$225 is presumptively reasonable; for paralegals, a rate between $95-150 is presumptively reasonable.  Loc. R., App'x B.3.

SSH has submitted no evidence addressing the years of experience of the various attorneys assigned to this case and has therefore failed to establish the reasonableness of any rate exceeding the minimum guideline.  *See Astornet Techs., Inc.*, 201 F. Supp. 3d at 730.  Although the Guidelines are not binding, SSH has not provided adequate grounds for this Court to depart from the presumptively reasonable rates.  *See Manning*, 2014 WL 1418322, at *5.  Accordingly, and out of an abundance of caution, the Court will use the upper end of the rate applicable to

15

those attorneys practicing less than five years. Thus, the Court awards a rate of $225 hours submitted by ZEN and JMH.

The Court applies the guidelines regarding compensable and non-compensable time found in Maryland Local Rules Appendix B.  Maryland's local rules provide that only "one lawyer is to be compensated for … intraoffice conferences, although if only one lawyer is being compensated the time may be charged at the rate of the more senior lawyer."  Loc. R., App'x B.2.b.  On several occasions, more than one of Plaintiff's attorneys billed time involved in intraoffice conference.  ECF No. 10 at 10-11 (7/17/18, JMH (.2 hours) and DMM (.3 hours); 8/6/18: JMH (.2 hours) and DMM (.2 hours); 8/21/18: ZEN (1 hour) and DMM (.9 hours); 10/10/18: JMH (.2 hours) and DMM (.4 hours); 1/14/18: JMH (.7 hours), ZEN (.5 hours), and DMM (.2 hours)).  The Court modestly adjusts the hours expended accordingly.  *See* Loc. R., App'x B.2.b.

In sum, the Court awards a total of $8,502.50 in fees and costs.[6]

---

[6] The specific adjusted breakdown is as follows:

| Name | Hours | Billing Rate | Total |
|---|---|---|---|
| Zachary E. Nahass | 7.6 | $225 | $1,710.00 |
| Devon Myers | 7.7 | $200 | $1,540.00 |
| Devon Myers | 1.7 | $225 | $382.50 |
| Jack M. Hartman | 6.4 | $225 | $1,440.00 |
| Judith M. Becker | 20.2 | $150 | $3,030.00 |
| | | **Total Attorneys' Fees** | **$8,102.50** |
| | | **Total Costs** | **$400.00** |
| | | **Grand Total** | **$8,502.50** |

## IV.    Conclusion

Plaintiffs' Motion for Default Judgment is GRANTED in part and DENIED in part.

Judgment in the amount of $214,328.26 SHALL BE ENTERED against Defendant WH

Administrators, Inc. for unpaid reimbursement, pre-judgment interest, and reasonable attorneys'

fees and costs that became due from the date this action was filed and through the date of

judgment.  Additionally, post-judgment interest, calculated in accordance with 28 U.S.C. § 1961,

shall continue to accrue until the judgment is satisfied.  A separate Order follows.


8/7/2020_____         _____/S/_____
Date                                                                            Paula Xinis
                                                                                   United States District Judge